**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **DELTA FUEL CO., INC.** | **CASE NO. 18-CV-01334** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **TODD ABBOTT** | **MAGISTRATE JUDGE PEREZ-MONTEZ** |

**REASONS FOR JUDGMENT**

This is an action to enforce non-competition and non-solicitation provisions in an employment contract. The case was brought by plaintiff Delta Fuel Co., Inc. ("Delta ") against its former employee, defendant Todd Abbott. Delta filed the Motion to Dismiss or for Summary Judgment shortly before trial. Following a bench trial, the Court took the case, Delta's Motion to Dismiss or for Summary Judgment, and Delta's Motion for Judgment on Partial Findings under advisement. After considering the trial record, the arguments of counsel, and the relevant authority, the Court rules as follows.

**I.**
**PROCEDURAL HISTORY**

Delta commenced this action in state court on October 1, 2018, obtaining a Temporary Restraining Order against Abbott on the same date. [ECF No. 1] Abbott removed the action to this Court on October 10, 2018 [*Id.*] and filed an Answer and Counterclaim. [ECF No. 6] The court then entered an order compelling arbitration with respect to Abbott's counterclaims pursuant to a Confidentiality and Restrictive Covenant Agreement (the "Restrictive Covenant") signed by the parties. [ECF No. 25] A scheduling conference was held on August 29, 2019, at which time trial was set for January 13, 2020. [ECF No. 28] Trial was later continued to April 6, 2020, due to a

discovery dispute and the status of discovery. [ECF No. 59] In March 2020, this Court continued the trial without date due to circumstances related to the COVID-19 pandemic. [ECF No. 72] A status conference was held on June 4, 2020, and the trial date was reset for July 27, 2020. [ECF No. 74] On June 10, 2020, Abbott filed a Motion to Dismiss or for Summary Judgment, arguing that the non-competition agreement between the parties would expire by operation of law prior to trial. [ECF No. 75] At trial, Abbott filed a Rule 52(c) Motion for Judgment on Partial Findings. Both of Abbott's motions were taken under advisement. After trial the parties were ordered to submit amended or supplemental proposed findings of fact and conclusions of law and post-trial briefs.

## II.
### BACKGROUND

Delta is a company engaged in the business of selling and distributing fuel, lubricants, and propane, as well as services intended to extend the life of machinery and lubricants, known as oil services or reliability services. Reliability services include, among other things, monitoring and maintaining lubricants, oil sampling and filtration, tank cleaning, vacuum dehydration, high-velocity flushes, and designing reliability service plans and schedules. Delta's customers include companies in the agricultural, industrial, and energy sectors. Delta is headquartered in Ferriday, Louisiana, has locations in Mississippi, Louisiana, Arkansas, and Texas, and operates in approximately eighteen (18) additional states. Delta provides reliability services throughout its operational area in order to support its sales and distribution divisions. While Delta has long provided reliability services where necessary, in 2018 it created a company division devoted solely to reliability services. Delta houses its reliability services equipment and products in facilities that serve multiple purposes. Delta does not have any facilities dedicated solely to storing reliability

services equipment and products. If Delta does not have reliability services personnel, products, or equipment where they are needed, it provides those services through subcontractors.

RelaDyne is an international company that sells and distributes fuel and lubricants and provides reliability services to support those products. RelaDyne operates throughout the United States, has seven (7) facilities in the United States that perform only reliability services, and four (4) such facilities in other countries. RelaDyne's customers include companies in the industrial, energy, military, and marine segments. Adam Vegas, co-owner of Delta, testified that he considers RelaDyne to be a competitor of Delta in the area of reliability services, and that the two companies have competed for contracts to provide reliability services. Scott Hill, RelaDyne's Vice President of Reliability Services, testified that he knew Delta as a seller and distributor of fuel and lubricants, was unaware prior to this suit that Delta provided reliability services, and was unaware of any time that the two companies had competed for a contract to provide reliability services.

Prior to beginning employment with Delta, Todd Abbott was employed for approximately thirteen (13) years by Hill Oil, and by RelaDyne after RelaDyne acquired Hill Oil. Abbott worked as an industrial sales specialist with RelaDyne's reliability services division in Arkansas.

Abbott and Brad Gordon, who worked as a reliability technician for RelaDyne, were approached by Delta and offered employment in Delta's fledgling reliability services division. They accepted the offer and Abbott began working for Delta in February 2018. Abbott testified that he was hired by Delta to start and grow a reliability services division for Delta. As part of the hiring process, Delta required Abbott to sign the Restrictive Covenant which is the basis of this suit. Among other things, the Restrictive Covenant forbids Abbott from working for a competitor of Delta for two years from the end of employment with Delta. Employees of Delta testified that Abbott was hired to manage its reliability services division across its entire operational footprint,

including developing business from new and existing Delta customers, marketing Delta's reliability services, and providing technical support and educational training to sales staff. Shortly after Abbott was hired, Delta employees participated in a strategic planning and budgeting meeting to determine, among other things, what resources would be necessary and where new customers might be found. Delta acquired reliability services equipment that Abbott identified as necessary and leased a location in Arkansas where it could be stored.

According to Delta, Abbott failed to grow the reliability services division after he was hired and resigned abruptly after five months of employment. Abbott testified that, after he was hired, he discovered that Delta was unprepared to create or maintain a viable reliability services division, was unable to obtain industrial customers for reliability services, and that he doubted that Delta could serve reliability customers sufficiently if it were able to obtain them. Abbott resigned from Delta in July 2018 and returned to work for RelaDyne. Abbott is currently employed as a technician supporting RelaDyne's industrial reliability services salesforce. Delta sent Abbott a reminder of the non-competition provisions of the Restrictive Covenant when it learned that he was employed by RelaDyne. Delta subsequently filed suit as described above, seeking to enjoin Abbott from working for RelaDyne in the field of reliability services in a list of specified counties and parishes. Delta alleges that Abbott has interfered with Delta's current and potential reliability services customers since he returned to RelaDyne. Abbott denies this allegation.

### III.
### ABBOTT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

At trial, Abbott re-urged his Motion to Dismiss or for Summary Judgment on the grounds that the Restrictive Covenant expired prior to trial. Abbott argues that the Restrictive Covenant may only prohibit competition for two years from the termination of his employment with Delta,

which occurred on July 6, 2018. Abbott argues that the two-year term of his non-competition agreement therefore expired prior to trial and is no longer enforceable by injunctive relief that extends the term of the agreement. While the Restrictive Covenant contains a clause purporting to toll its two-year term during litigation, Abbott contends that this tolling provision is void because it is inconsistent with Louisiana law. Delta, on the other hand, argues that Abbott's motion is untimely, that Abbott should be judicially estopped from arguing that the tolling provision is unenforceable, that the tolling provision is valid under Louisiana law, and, alternatively, that Delta is entitled to equitable tolling. While the Court agrees that the motion was made after the deadline for dispositive motions had expired, the issue raised by the motion is a legal issue that did not arise until trial was set, and the issue must be decided before the Court can conclude whether Abbott violated the Restrictive Covenant.

### A. **Louisiana Law Limits Non-compete Agreements to Two Years.**

Louisiana has a strong policy against covenants not to compete, as evidenced by Louisiana Revised Statute ann. 23:921(A)(1). This statute provides that non-compete agreements are null and void unless they fall within the specific exceptions enumerated in the statute. La. Stat. Ann. § 23:921(A)(1). Agreements not to compete must be narrowly construed in accordance with 23:921. *Arthur J. Gallagher & Co. v. Babcock*, 339 F. Apex 384, 387 (5th Cir. 2009). This is especially true regarding geographic *and time* limitations, which require "mechanical adherence to the requirements listed in the law." *L & B Transp., LLC v. Beech*, 568 F.Supp.2d 689, 693 (M.D.La.2008) (citing *Plunk v. LKQ Birmingham, Inc.*, No. CIV.A. 12-2680, 2013 WL 5913755, at *4 (W.D. La. Oct. 31, 2013)); *see also Affordable Roofing, Siding, & Gutters, Inc. v. Artigues*, No. CV 16-16872, 2017 WL 713693, at *2 (E.D. La. Feb. 23, 2017). Under section 23:921, an employee can agree not to compete with a former employer or solicit customers of the former

employer within a specified geographical range for up to two years from termination of employment. La. Stat. Ann. § 23:921(C).

Here, Abbott's employment terminated on July 6, 2018. The two-year period under section 23:921 thus expired on July 6, 2020, 21 days prior to the bench trial of this matter. Absent tolling or estoppel, Delta cannot obtain injunctive relief enforcing the non-compete and non-solicitation provisions of the Restrictive Covenant because that relief would effectively extend those provisions beyond the statute's two-year time limit. Delta, however, contends that both tolling and judicial estoppel apply to the statute's two-year time limit.

### B. Does the Restrictive Covenant Toll Section 23:921?

Sections 2(b)-(d) of the Restrictive Covenant prohibit Abbott from competing with Delta, soliciting clients of Delta, or recruiting other employees of Delta, for a period of two years from the end of employment with Delta. [ECF No. 1-1 at 31] Section 2(f) of the Restrictive Covenant contains a tolling provision which provides that Abbott agrees that "in the event [he] violates any provision of this Agreement, the post-employment period of the restrictive covenants set forth in Sections 2(a) through (e) of this Agreement shall begin to run from the latter of (i) the date on which such violation ceases or (ii) the date of any final, non-appealable judgment, settlement, or other resolution of any judicial proceeding or legal action, claim or controversy enforcing or upholding any such provision of this Agreement." [*Id.*] Abbott argues that Section 2(f) of the Restrictive Covenant is unenforceable to the extent that it seeks to extend the non-competition agreement beyond the statutory two-year period from the date of his employment. Delta argues that Section 2(f) should be given full effect and that Abbott's non-compete restrictions should run for two years from the date of final judgment, or alternatively that the Court should equitably toll the start of the non-compete period until final judgment is issued. [*See* ECF No. 77 at 16]

As always, the starting point for the Court is the text of the statute. Section 23:921 expressly limits a non-compete and non-solicitation provision to two years "from termination of employment." La. Stat. Ann. § 23:921(C). This statute contains no language allowing an extension (through tolling or otherwise) of a non-competition agreement beyond two years from the termination of employment, and courts have interpreted this to mean that no such extension is allowed. Otherwise, a contractual tolling provision would effectively override the express language of the statute and allow a non-compete/non-solicitation agreement to extend beyond the two-year period after termination. For example, in *Allied Bruce Terminix v. Ferrier*, 634 So. 2d 44, 45 (La. Ct. App. 1994), the court ruled that a similar provision purporting to toll the two-year period under section 23:921(C) was "null and void" based on the language of the statute expressly commencing the two-year time limit on an employee's termination date. According to the court:

> Plaintiff seeks enforcement of the provision of its contract which would extend this period for two years from the date of a final judgment in its favor. However, such a provision in a noncompetition or nonsolicitation agreement is null and void under the clear language of Revised Statute 23:921, as that statute permits restriction of an employee's right to compete for two years ***from the date of termination of employment*** and no longer.

*Id.* (emphasis added). Similarly, in *Herff Jones, Inc. v. Girouard*, 966 So. 2d 1127, 1136–37 (La. App. 3 Cir. 10/3/07),[1] the Louisiana Third Circuit declined to give effect to a contractual provision that allowed a non-compete provision to be extended for more than two years, citing the limit imposed by 23:921(C). *See also Century 21 Richard Berry & Assocs., Inc. v. Lambert*, 8 So. 3d 739, 743 (La. App. 5 Cir. 2/25/09) (contract clause providing that non-compete provision survived termination of the underlying agreement was unenforceable on the grounds that it impermissibly extended the non-competition agreement beyond the two-year period from termination); *Smith v. Commercial Flooring Gulf Coast, L.L.C.*, ___ So.3d ___, 2019 WL 5073582 (La. App. 4 Cir.

---

[1] *writ denied*, 976 So. 2d 185 (La. 2/15/08).

10/9/19) (Louisiana's Fourth Circuit modified the lower court's injunction enforcing a non-compete agreement so that the injunction did not extend more than two years *from the termination of employment*).

Delta, on the other hand, relies on *Gaylord Broad. Co. v. Cosmos Broad. Corp.*, 746 F.2d 251 (5th Cir. 1984) and *Sabre Indus. Inc. v. McLaurin*, 2019 WL 3933798 (W.D. La. Aug. 19, 2019) to support its argument that non-compete provisions can be tolled by agreement. In *Gaylord* the Fifth Circuit concluded such tolling agreements are acceptable. 746 F.2d at 253 n.1. *Gaylord*, however, based its holding on the pre-1989 version of section 23:921. That version of the statute also imposed a two-year limitation on non-compete agreements:

> [P]rovided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged in over the same route or in the same territory ***for a period of two years***.

*Orkin Exterminating Co. v. Foti*, 302 So. 2d 593, 595 (La. 1974) (quoting the text of the pre-1989 version of the statute) (emphasis added). The current version of the statute expressly commences the two-year limit on non-competition and non-solicitation from "termination of employment." Because statute does not provide that this limit can be extended or tolled, the restriction on competition and solicitation runs for two years from "the date of termination of employment ***and no longer***." *Allied Bruce Terminix*, 634 So. 2d at 45 (emphasis added). The prior version of the statue at issue in *Gaylord,* however, merely states that an employee can agree to competition and solicitation restrictions "for a period of two years." *Orkin Exterminating Co.*, 302 So. 2d at 595. The fact that the prior statutory language is less clear and absolute than the current version left open the possibility of a tolling provision like Section 2(f) of the Restrictive Covenant. That

possibility is not present in the current version of the statute. *Allied Bruce Terminix*, 634 So. 2d at 45; La. Stat. Ann. § 23:921(C). Simply put, *Gaylord* is inapplicable here.[2] To the extent that *Sabre* based its holding on *Gaylord*, the Court concludes that *Sabre* is not applicable to the facts of the present case. *Sabre*, 2019 WL 3933798 at *4.

Delta further argues that reading section 23:921 to strictly commence the two-year limitation as of termination of employment would allow employees to violate their non-compete/non-solicitation agreements while they prolong and stall litigation seeking to enforce those agreements. The primary problem with this argument is that it is merely an invitation to ignore the statutory text and second-guess the legislature's choice of words. That is not the role of the Court. Moreover, this reading of the statute does not leave employers without a remedy. Employers can seek a preliminary injunction enforcing some or all of the protections of a non-compete agreement pending the resolution of litigation over that agreement. While that injunction could not extend longer than two years from the date of termination, it would provide an employer with some of the benefits of the non-compete agreement for that statutorily authorized term. Delta did not seek a preliminary injunction. Moreover, as the Circuit recognized in *Gaylord*, an employer can seek monetary damages when injunctive relief is not available. 746 F.2d at 254.

With respect to Delta's equitable tolling argument, this doctrine typically allows a plaintiff to file an action after a statute of limitations has run if the plaintiff has diligently pursued his or her rights during the statutory period, or where a plaintiff has been induced into missing the filing deadline by adversarial misconduct. *See, e.g., Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 239 (5th Cir. 2010). Delta argues that the same equitable concerns should apply to the two-year period

---

[2] The Court also notes that *Gaylord*'s endorsement of contractual tolling provisions in a footnote is dicta because the agreement at issue in the case did not contain a tolling provision. Also, the court made its endorsement in discussing the holding of a decision by the United States Court of Appeals for the First Circuit in a case that involved *Massachusetts* law, not Louisiana law.

under section 23:921 because Delta was not at fault for the delayed trial date. Specifically, in its Opposition to Abbott's Motion, Delta requests that if Section 2(f) is unenforceable, the Court "should equitably toll the enforcement of the two-year restrictive covenants *as the parties intended and eventually agreed in the contract*." [ECF No. 77 at 16 (emphasis added)] First, as explained previously, Delta and other employers can seek equitable relief pending completion of litigation over a non-compete agreement. Moreover, Delta's argument is requesting that the Court give effect to a contractual provision *on the basis of equity* even though that contractual provision is void under the governing statute. Delta cites no authority allowing this Court to use equity to accomplish what a statute expressly forbids. In sum, Section 2(f) of the Restrictive Covenant is unenforceable to the extent that it seeks to extend the non-compete and non-solicitation provisions of the agreement beyond the two-year period from Abbott's termination.

### C. **Abbott is Not Judicially Estopped from Arguing the Tolling Provision is Invalid.**

Delta alternatively argues that Abbott is judicially estopped from arguing that Section 2(f) is unenforceable. According to Delta, Abbott previously argued that Section 2(f) tolls the two-year restriction on competition and solicitation when he argued for a continuation of the trial date. Specifically, Delta argues that the Court declined Delta's request for an earlier trial date (in October 2019) during the August 2019 status conference, based on Abbott's statement that there was no need for an early trial date because the Restrictive Covenant was tolled by Section 2(f). Delta argues that Abbott cannot now make the opposite argument that, because the trial date was delayed, Delta is barred from injunctive relief because the statute's two-year restriction expired prior to trial. Abbott, on the other hand, argues that none of the trial dates set in this case was set on the sole basis of his statement at the August 2019 scheduling conference. Abbott also states that

at the time of the scheduling conference he was unaware that Section 2(f)'s tolling provisions are unenforceable under Louisiana law.

Judicial estoppel prevents a party from taking a position (whether as a claim or defense) in a legal proceeding that is inconsistent with a position taken by that party in a prior proceeding. *Heston, Next Friend of A.H v. Austin Indep. Sch. Dist.*, 816 F. App'x 977, 984 (5th Cir. 2020). The Fifth Circuit has described the requirements for judicial estoppel as: (1) a party's position is "plainly inconsistent with its prior position;" (2) the party must have convinced a court to accept the prior position; and (3) the party must not have acted inadvertently. *Id.* The United States Supreme Court has added an additional factor to consider, namely "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *United States v. Farrar*, 876 F.3d 702, 709 (5th Cir. 2017) (citing *Zedner v. United States*, 547 U.S. 489, 504, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006)).

Here, the requirements for judicial estoppel have not been satisfied based on the undisputed facts in the record. During the August 2019 scheduling conference, Delta initially requested a trial date before the end of 2019, and Abbott requested a date in January or February 2020. [ECF No. 38 at 3-4, 14] Abbott did claim that the non-competition agreement would not start to run until the date of judgment. [*Id.* at 11] However, after the parties and the Court discussed the need for more time for discovery, Delta conceded that a date in January 2020 would be "realistic." [*Id.* at 15-16] Reviewing the entire record of the conference, the Court's decision to set trial in January 2020 was not made on the basis of Abbott's claim regarding tolling of the non-competition agreement. Instead, it was based on consideration of the ongoing discovery.

The undisputed facts in the record satisfy several requirements for the judicial estoppel. The first requirement for judicial estoppel is present: Abbott has taken inconsistent positions

regarding the tolling provision of Section 2(f). The third requirement for the doctrine is also present: while Abbott's counsel has stated that he had not researched the enforceability of the tolling provisions in Section 2(f), nothing in the record indicates that his comments during the August 2019 scheduling conference were inadvertent.

However, the other requirements for applying judicial estoppel are not satisfied. The second requirement for the doctrine is not present: the Court was not convinced at the August 2019 scheduling conference to accept Abbott's position on tolling. The parties had not briefed the question; Delta did not address Abbott's statement on tolling;[3] and the Court made no decision regarding tolling. Instead, the Court based its decision on the state of discovery and set a trial date that was still within the two-year period after Abbott's termination. *See, e.g.*, *United States v. Farrar*, 876 F.3d 702, 713 (5th Cir. 2017) (finding the court was convinced to accept the previous position when the Magistrate Judge was hesitant to accept the defendant's *nolo contendere* plea but was convinced by the defendant's statement that he was not trying to hide behind the law or create an issue for appeal). The trial date was ultimately continued to July 2020, but that continuance was based on the COVID-19 pandemic and the need to implement appropriate safeguards for in-person proceedings. It was not based on unsupported representations about the tolling effect of Section 2(f).

Evidence satisfying the fourth requirement for judicial estoppel is also absent: Abbott's argument that Section 2(f) is unenforceable does not impose an unfair advantage. Specifically, in December 2019, the trial was continued from January 2020 until April 2020, based on the status of discovery and the existence of discovery disputes. [ECF Nos. 45, 50] In March 2020, this Court continued the April trial due to circumstances related to the COVID-19 pandemic [ECF No. 72],

---

[3] Delta did not object to Abbott's position regarding tolling despite the fact that Delta suggested at the hearing that it held the position that the Restrictive Covenant would expire in July 2020. [ECF No. 38 at 8]

and reset the trial date for July 27, 2020. [ECF No. 74] Because the trial date was reset, and the trial delayed, in consideration of circumstances other than Abbott's argument regarding tolling, the advantage conferred to Abbott by the timing of trial is not the result solely of his inconsistent litigation positions.

Consequently, the Court concludes that the undisputed facts in the record do not support all of the essential requirements for invoking the judicial estoppel doctrine and foreclosing Abbott's argument that Section 2(f) is unenforceable.

\* \* \*

For the reasons given above, the Court concludes that the non-competition/non-solicitation provisions of the Restrictive Covenant expired on July 6, 2020. Consequently, the motion is GRANTED.

## IV.
### ABBOTT'S MOTION FOR JUDGMENT ON PARTIAL FINDINGS.

In light of this Court's determination that the non-competition provisions of the Restrictive Covenant expired prior to trial, Abbott's Motion for Judgment on Partial Pleadings is DENIED AS MOOT.

# V.
## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Todd Abbott's Motion to Dismiss or for Summary Judgment [ECF No. 75] is GRANTED. Abbott's Motion for Judgment on Partial Findings is DENIED AS MOOT.

IT IS FURTHER ORDERED that Delta Fuel Co., Inc.'s claims are DISMISSED.

THUS DONE in Chambers on this 22nd day of January, 2021.

 

**ROBERT R. SUMMERHAYS**
**UNITED STATES DISTRICT JUDGE**